UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL J. CUDDIHY,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

19-CV-00918-LJV
DECISION & ORDER

---

      On July 12, 2019, the plaintiff, Michael J. Cuddihy, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On December 1, 2019, Cuddihy moved for judgment on the pleadings, Docket Item 8; on January 21, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10; and on February 11, 2020, Cuddihy replied, Docket Item 11.

      For the reasons stated below, this Court denies Cuddihy's motion and grants the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

      "The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Cuddihy argues that the ALJ erred by ignoring the opinion of one of his treating physicians in determining his residual functional capacity ("RFC"). Docket Item 8-1 at 10-13. This Court disagrees and accordingly affirms the Commissioner's denial of disability benefits.

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have

"ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." See 20 C.F.R. § 404.1527(a)(2), (c)(2); see also Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "Burgess factors" from Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008). Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight" to a treating source opinion "is a procedural error." Id. at 96 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the ALJ did not discuss—and therefore did not assign any weight to—an assessment completed by Cuddihy's treating physician, internist Rania Karam-Bayoumi, M.D. See Docket Item 6 at 30-32. Dr. Bayoumi treated Cuddihy twice in 2014, id. at 672-74, 679, and, in response to Cuddihy's request for "a letter for disability," id. at 679, opined in April 2014 that Cuddihy was, for some unexplained reason and for some

unstated length of time, "unable to work at this point due to medical problems." *See id.* at 944. Cuddihy therefore correctly observes that the ALJ did not explicitly address any of the *Burgess* factors before assigning less-than-controlling weight to Dr. Bayoumi's statement—an apparent "procedural error." *See Estrella*, 925 F.3d at 96. The Commissioner responds that the ALJ did not, in fact, err because the assessment did not constitute true medical "opinion" evidence so as to merit the deference due opinions from treating physicians. *See* Docket Item 10-1 at 20-22. The Court agrees with the Commissioner.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); 416.927(a)(1). "Opinions on some issues, such as [an opinion that a claimant is 'disabled' or '"unable to work'], are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner . . . ." 20 C.F.R. § 404.1527(d)(1); 416.927(d)(1). A one-line statement, unsupported by any specific findings or diagnostic testing, does not constitute a medical "opinion." As such, the ALJ did not err in not considering Dr. Bayoumi's statement.

But the fact that Dr. Bayoumi's assessment was not a "medical opinion" does not end the matter; on the contrary, it raises another issue. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir.

4

1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)). On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Id.* at 79 n.5 (quoting *Perez*, 77 F.3d at 48)).

The Commissioner's own regulations reflect this duty, explaining that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner "will request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[2]) (additional citation omitted). The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner '*will*

---

[2] This section was amended, effective March 27, 2017. Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Because Cuddihy applied for disability benefits starting November 2015—that is, before the date the changes became effective—her claim is governed by the prior regulation. *See id.* at 5844-46.

request a medical source statement' containing an opinion regarding the claimant's residual capacity.  The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Id.* (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted).  But "remand is not always required when an ALJ fails in his duty to request [medical source] opinions [from treating sources], particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *See id.* at 34.

So in light of the Commissioner's "affirmative obligation" to develop the record, the ALJ's failure to solicit a proper medical opinion from Dr. Bayoumi—or from another of Cuddihy's treating sources—might have constituted error even if the ALJ did not directly violate the treating physician rule.  But the Court has carefully considered this argument and, for the reasons stated below, is satisfied that "the record contain[ed] sufficient evidence from which [the] ALJ c[ould] assess [Cuddihy's] residual functional capacity," *see id.*  Stated another way, Dr. Bayoumi's one-line assessment that Cuddihy could not work "at this point," made in direct response to Cuddihy's request for "a letter for disability," did not create a record gap that the ALJ was obligated to fill.

On the contrary, the ALJ's RFC determination was solidly based on the opinions of the consulting physician, internist Hongbiao Liu, M.D., the consulting psychologist, Gina Zali, Pys.D., and the medical expert, Amy L. Depue, D.O., to each of which the ALJ gave "great" weight.  *See id.* at 30-31.  Dr. Liu opined in March 2016 that Cuddihy had "no limitation[s] for routine activities."  *Id.* at 851.  Dr. Zali opined, also in March 2016, that Cuddihy had no limitations following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and

6

concentration, performing complex tasks, making appropriate decisions, and relating adequately with others; Dr. Zali also determined that due to Cuddihy's anxiety, however, Cuddihy had mild limitations maintaining attention and concentration, learning new tasks, and appropriately dealing with stress. *Id.* at 856-57. And Dr. DePue opined in April 2018, based on her review of Cuddihy's medical records and in response to an interrogatory sent by the ALJ, that no physical limitations resulted from Cuddihy's hypertension. *See id.* at 953. The ALJ explained that all three professionals' opinions were "consistent with" the "examination findings" and "the longitudinal record." *Id.* at 30, 31.

Three medical professionals thus agreed that Cuddihy did not have any significant impairments in either his physical or mental functioning. Those findings were supported by a number of unremarkable treatment notes in the record—including notes from Dr. Bayoumi. *See, e.g., id.* at 668-71, 675-78 (May, June, and October 2014 treatment notes from James H. Matthews, M.D., noting abdominal pain, right lower back pain, anxiety, and a toe infection); *id.* at 672-74 (October 2014 treatment note from Dr. Bayoumi noting recent ER visit for panic attack; documenting failure to take prescribed anti-anxiety medications and prescribing new anti-anxiety medication; observing "appropriate mood and affect"); *id.* at 679 (April 2014 treatment note from Dr. Bayoumi refilling prescriptions; no other complaints). Cuddihy does not and cannot point to any evidence going the other way. *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) ("The claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought." (citation omitted)). And Dr. Bayoumi's one-time statement—that in April 2014 Cuddihy was unable to work for unspecified medical

7

reasons for some unspecified period of time—neither suggests that all the other medical professionals were wrong, nor does it create a gap in the record that the ALJ was required to fill.

The only opinion that might suggest limitations beyond those in the Liu, Zali, and DePue opinions is that of Cuddihy's treating physician assistant, Gary C. Wysocki, RPA-C, who opined in March 2017 that, due to his non-Hodgkins lymphoma, hypertension, and panic attacks, Cuddihy was moderately limited in lifting, carrying, pushing, bending, and climbing. *See* Docket Item 6 at 950. PA Wysocki also stated, however, that Cuddihy had no limitations in walking, standing, sitting, seeing, hearing, speaking, or using his hands; or in any areas of mental functioning. *Id.* These later findings seriously undermine PA Wysocki's ultimate conclusion that Cuddihy would be unable to work in competitive employment for at least 80 hours per month. *Id.*; *see also id.* at 32 (ALJ giving "little" weight to PA Wysocki's opinion because it was "inherent[ly] inconsistent"). So too do PA Wysocki's largely normal treatment notes. *See, e.g.*, *id.* at 642-49 (December 2015 notes about bronchial infection); *id.* at 650-54 (November 2015 notes about high blood pressure, documenting recent emergency room ("ER") visits for anxiety and hypertension; "stress test . . . was negative"); *id.* at 655-56 (September 2015 note about recent ER visit for hemorrhoids); *id.* at 657-58 (August 2015 "[f]ollow-up [for] panic attacks," noting that "symptoms well controlled with medication"); *id.* at 659 (June 2015 treatment note observing that Cuddihy had "no [musculoskeletal]

complaints" and was "[n]egative for: joint pain, joint swelling, joint stiffness, [and] muscle pain").

What is more, even giving Cuddihy the benefit of the doubt and limiting him in the ways suggested by PA Wysocki still would not suggest prejudicial error.[3] The ALJ found that Cuddihy had the following RFC:

> [Cuddihy can] perform medium[4] work . . . except . . . [he] can perform [only] simple, routine, repetitive tasks [and only below] a production rate pace[;] . . . can use judgment to make [only] simple work-related decisions[;] . . . can tolerate [only] few changes in a routine work setting[,] defined as performing the same duties at the same station or location day to day[;] . . . [and] can perform work involving [only] occasional and superficial contact with supervisors, coworkers, and the public.

Docket Item 6 at 26. The ALJ thus imposed greater mental limitations than those suggested by PA Wysocki. And although the ALJ differed somewhat in the physical realm by not limiting Cuddihy's ability to lift, carry, push, bend, and climb, a vocational expert testified at the disability hearing—testimony adopted by the ALJ in the written disability determination—that even considering his various mental limitations, Cuddihy

---

[3] When Cuddihy filed his claim, physicians assistants were "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006). But an opinion from such a source still could "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion." *Id.*; *see also Estrella*, 925 F.3d at 98 ("caution[ing] that ALJs should not rely heavily on the findings of consultative physicians after a single examination" (quoting *Selian*, 708 F.3d at 419)). *Cf.* 20 C.F.R. § 416.902(a)(8) (2017) (expanding list of "acceptable medical sources" to include "[l]icensed [p]hysician [a]ssistant[s]").

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c); 416.967(c). Notably, Cuddihy testified at the disability hearing that he could lift up to 50 pounds. Docket Item 6 at 56.

could perform a number of jobs classified as "light" or "sedentary" work,[5] that is, not requiring significant lifting, carrying, pushing, bending, and climbing. *See id.* at 34-35, 64. Those jobs included electronic worker, small product assembler, mail sorter, table worker, final assembler, and semi-conductor bonder. *Id.* In other words, even assuming that Cuddihy was limited in the ways suggested by his treating physician assistant, the ALJ's determination still would not have been erroneous.

And although, as noted above, an ALJ generally should obtain medical source statements from treating sources—particularly from treating mental health professionals—before denying an application for disability benefits, that does not appear to have been possible here. Cuddihy received only limited, sporadic treatment from various providers at Lakeshore Behavioral Health, largely focused on medication management. *See id.* at 520 (discharging Cuddihy in January 2015 after two months of treatment because of his failure to attend appointments); *id.* at 905-20 (treatment notes from April to August 2017 documenting five appointments; noting two missed appointments); *id.* at 935 (November 2017 medication management treatment note); *see also id.* at 662 (PA Wysocki April 2015 treatment note referring Cuddihy to Lakeshore for his panic attacks); *id.* at 659 (PA Wysocki's June 2015 treatment note

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a); 416.967(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b).

stating that Cuddihy "[s]till didn't call [L]akeshore for [an] app[ointment]").  Stated differently, as with his physical impairments, Cuddihy has neither pointed to evidence showing that his mental impairments were more severe than reflected in the ALJ's RFC determination nor pointed to evidence suggesting that a medical professional might opine otherwise.

## **CONCLUSION**

Although this Court has sympathy for Cuddihy and the hardships that must stem from the impairments he experiences, the ALJ's decision neither was contrary to the substantial evidence in the record nor did it result from any legal error.  Therefore, for the reasons stated above, Cuddihy's motion for judgment on the pleadings, Docket Item 8, is DENIED; the Commissioner's cross motion for judgment on the pleadings, Docket Item 10, is GRANTED; the complaint is DISMISSED; and the Clerk of Court shall close the file.

SO ORDERED.

Dated:     August 6, 2020
            Buffalo, New York

                                    */s/ Hon. Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE